Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 28, 2022

**2022 CO 15**

**No. 21SA181, *People v. Moreno* — Freedom of Speech — Overbreadth — Harassment.**

In this appeal, the supreme court reviews a district court's order invalidating part of Colorado's harassment statute. The court holds that that the phrase "intended to harass" in section 18-9-111(1)(e), C.R.S. (2021), is unconstitutionally overbroad, impermissibly restricting protected speech. Accordingly, the court affirms the district court's order.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

**2022 CO 15**

**Supreme Court Case No. 21SA181**
*Appeal from the District Court*
Garfield County District Court Case No. 19CR161
Honorable James B. Boyd, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Alfred Elias Moreno.

**Order Affirmed**
*en banc*
March 28, 2022

**Attorneys for Plaintiff-Appellant:**
Jefferson J. Cheney, District Attorney, Ninth Judicial District
Donald R. Nottingham, Chief Deputy District Attorney
  *Glenwood Springs, Colorado*

**Attorneys for Defendant-Appellee:**
Megan A. Ring, Public Defender
Casey Mark Klekas, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ, JUSTICE GABRIEL, JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE HOOD delivered the Opinion of the Court.

¶1    In this appeal, we review a district court's order invalidating part of Colorado's harassment statute.  The district court concluded that the phrase "intended to harass" in section 18-9-111(1)(e), C.R.S. (2021), unconstitutionally restricts protected speech.  We agree that this provision is substantially overbroad on its face and thus affirm the order.

## I.  Facts and Procedural History

¶2    In December 2018, Alfred Moreno repeatedly emailed his ex-wife, E.M.  He asked to see his children, but he also made a series of disparaging and vulgar comments about her, saying that he hated her and that she was a "snake" and a "whore" with an "STD."  In response, E.M. told Moreno to stop contacting her.  Undeterred, Moreno posted the following on Facebook: "To whom ever is fkng [E.M.] in my friends list.  Will you please tell her to have my kids call me asap.  You can have her and the STD[.]  I just want my kids to contact me.  And remember that you are not there [sic] father okay.  Thanks homies[.]"

¶3    The prosecution charged Moreno with (1) harassment under section 18-9-111(1)(e), a class three misdemeanor; and (2) habitual domestic

3

violence under section 18-6-801(7), C.R.S. (2021), a class five felony.[1]

¶4     Moreno moved to dismiss the harassment charge, arguing that subsection (1)(e) is unconstitutionally overbroad and vague, both facially and as applied to him, in violation of the freedom-of-speech provisions in the United States and Colorado constitutions.

¶5     As relevant here, section 18-9-111(1)(e) states that

> [a] person commits harassment if, with intent to harass, annoy, or alarm another person, he or she . . . [d]irectly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner *intended to harass* or threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene.

(Emphasis added.)

¶6     Although Moreno did not specify which part of subsection (1)(e) was the subject of his challenge, the district court concluded that the phrase "intended to harass" rendered the statute facially unconstitutional as vague and overbroad. Relying mainly on this court's decisions in *People v. Hickman*, 988 P.2d 628 (Colo.

---

[1] If the harassment charge constitutes an act of domestic violence as defined in section 18-6-800.3, C.R.S. (2021), it can trigger the sentence enhancer in section 18-6-801(7).

4

1999); *People v. Smith*, 862 P.2d 939 (Colo. 1993); and *Bolles v. People*, 541 P.2d 80 (Colo. 1975), the district court reasoned that Moreno's statements were protected speech and could not be construed as true threats, a category of unprotected speech that the government may regulate.[2] It explained that the phrase "intended to harass" could allow a person to be prosecuted for alarming or annoying others by forecasting a storm or predicting political trends — concerns that prompted this court to invalidate a similar statutory provision in *Bolles*. Moreover, it determined that the statute's prohibition on communications made in a manner "intended to harass" on seemingly any "other interactive electronic medium" sweeps too broadly, covering a substantial amount of protected speech. The court also noted that the statute's circular language "failed to apprise persons of ordinary intelligence what conduct is prohibited," making the "intended to harass" portion of the statute unconstitutionally vague. Because of these deficiencies, the court dismissed the harassment charge.

¶7     The prosecution appealed pursuant to section 16-12-102(1), C.R.S. (2021). Under section 13-4-102(1)(b), C.R.S. (2021), this court has jurisdiction to hear a direct appeal of a district court's determination that a statute is unconstitutional.

---

[2] On appeal to this court, the prosecution abandoned the argument that Moreno's statements constituted true threats or any other category of unprotected speech.

5

## II. Analysis

¶8 We begin by setting out the standard of review and then briefly outlining the constitutional framework for free-speech protections. With that background in place, we then focus on the overbreadth doctrine and apply an existing three-part test for overbreadth. After construing the statute, we hold that the phrase "intended to harass" in subsection (1)(e) is substantially overbroad on its face, impermissibly encroaching on protected speech. But by invalidating that phrase, we preserve the remainder of the statute. Before concluding, we also discuss *Bolles*—a nearly fifty-year-old precedent—and its enduring lessons for the digital age.

### A. Standard of Review

¶9 We review a district court's order regarding a statute's constitutionality de novo. *E-470 Pub. Highway Auth. v. Revenig*, 91 P.3d 1038, 1041 (Colo. 2004). Statutes are presumptively constitutional, and "declaring a statute unconstitutional is one of the gravest duties impressed upon the courts." *People v. Graves*, 2016 CO 15, ¶ 9, 368 P.3d 317, 322 (quoting *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 (Colo. 2000)). A litigant challenging the validity of a statute must prove the statute is unconstitutional beyond a reasonable doubt. *Id.*

6

## B. Constitutional Framework

### 1. Free-Speech Protections

¶10 Because section 18-9-111(1)(e) prohibits certain types of communications, it implicates the free-speech protections afforded by the United States and Colorado constitutions. *See Smith*, 862 P.2d at 941. Moreno invokes both constitutions, which respectively provide that "no law 'abridging' or 'impairing' freedom of speech shall be enacted." *Id.* (quoting U.S. Const. amend. I; Colo. Const. art. II, § 10). Still, the right to free speech is not absolute, and the government may create, and courts have upheld, statutes proscribing certain categories of *un*protected speech like fighting words, true threats, and obscenity.[3] *See id.*; *see also United States v. Stevens*, 559 U.S. 460, 468–69 (2010).

¶11 A statute restricting speech must be carefully crafted and narrowly drawn to carry out legitimate and constitutional legislative goals. *See Smith*, 862 P.2d at 941; *Bolles*, 541 P.2d at 82. Even if a statute aims to proscribe only unprotected

---

[3] The government may also regulate speech outside of these traditional unprotected categories (e.g., time, place, or manner restrictions) but subject to the appropriate level of scrutiny (strict scrutiny for content-based regulations and intermediate scrutiny for content-neutral regulations). *See, e.g., Denver Publ'g. Co. v. City of Aurora*, 896 P.2d 306, 308 (Colo. 1995) (holding content-neutral city ordinance proscribing direct solicitation of vehicle occupants traveling on city streets, in this case solicitation by newspaper hawkers, was narrowly tailored to advance significant governmental interest in traffic movement and safety).

speech, it may be struck down as facially overbroad if it *substantially* infringes upon constitutionally protected speech. *Smith*, 862 P.2d at 941; *see also Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

¶12 These bedrock notions hold true irrespective of whether the communication occurs in person or electronically. As the Supreme Court has explained, "whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principle[] of freedom of speech . . . , like the First Amendment's command, do[es] not vary' when a new and different medium for communication appears." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)).

¶13 Although courts often examine overbreadth and vagueness together, they are distinct doctrines that spring from different constitutional guarantees. *Graves*, ¶¶ 21–24, 368 P.3d at 325–26. While vagueness protection derives from the Due Process Clause and "concerns the lack of clarity in the language of a statute," overbreadth protection derives from the First Amendment and "concerns the reach of a statute and its encroachment upon constitutionally protected speech." *Id.* at ¶¶ 23–24, 368 P.3d at 325–26. When a litigant brings a facial challenge on

8

both overbreadth and vagueness grounds, we begin with the overbreadth analysis.[4] *See id.* at ¶ 25, 368 P.3d at 326.

## 2. Overbreadth Doctrine

¶14 The overbreadth doctrine establishes contours for the free-speech provisions of our state and federal constitutions. "[A] statute is facially overbroad if it sweeps so comprehensively as to substantially include within its proscriptions constitutionally protected speech." *Bolles*, 541 P.2d at 82.

¶15 The prosecution contends that Moreno lacks standing to bring this facial challenge because his conduct is clearly regulated by the statute, and therefore, he should not be able to attack the statute on the ground that prosecution of another defendant under the statute would be unconstitutional. But "this rule of standing is changed when the statute in question regulates speech. In such cases, a defendant is granted standing to assert the First Amendment rights of others."

---

[4] Moreno suggests that a scrutiny analysis could be employed instead. While it appears that "[t]he relationship of these two modes of free-speech analysis has never been adequately explained by the Supreme Court[,] . . . facial overbreadth analysis has been most commonly and sensibly used, in the First Amendment arena, in cases involving regulations directed at unprotected categories of speech." Marc Rohr, *Parallel Doctrinal Bars: The Unexplained Relationship Between Facial Overbreadth and "Scrutiny" Analysis in the Law of Freedom of Speech*, 11 Elon L. Rev. 95, 109, 129 (2019); *see also Peck v. McCann*, 525 F. Supp. 3d 1316, 1339 (D. Colo. 2021) (noting that "the Supreme Court itself has not provided clear guidance on when and how scrutiny tests versus overbreadth should apply").

*People v. Weeks*, 591 P.2d 91, 94 (Colo. 1979). Thus, regardless of whether a litigant's speech is constitutionally protected, he may challenge a law as overbroad. *People v. Baer*, 973 P.2d 1225, 1231 (Colo. 1999). This departure from typical standing rules recognizes that "the very existence of an overly broad statute may deter others from exercising their First Amendment rights." *Graves*, ¶ 13, 368 P.3d at 323. Allowing litigants to challenge a statute as facially overbroad thus protects the rights of us all. *Id.*; *Hickman*, 988 P.2d at 634 n.4.

¶16 Despite the broad standing we confer on litigants to press the right to freedom of speech, we must also respect the legislature's efforts to regulate abusive behavior. Indeed, the overbreadth doctrine is "strong medicine" that we employ "only as a last resort." *Graves*, ¶ 13, 368 P.3d at 323 (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)). While "the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, . . . invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects." *United States v. Williams*, 553 U.S. 285, 292 (2008). In balancing these priorities, the Supreme Court and this court have emphasized the requirement that a statute's overbreadth be "real and substantial" in relation to its plainly legitimate sweep. *Graves*, ¶ 14, 368 P.3d at 323; *see also Williams*, 553 U.S. at 292.

¶17 To accomplish this, overbreadth analysis consists of three steps. First, we must construe the challenged statute to establish its scope. *Graves*, ¶ 15, 368 P.3d at 323–24; *see also Williams*, 553 U.S. at 293 (explaining that "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers"). Second, we determine whether the statute, as construed, prohibits a substantial amount of protected speech. *Graves*, ¶ 15, 368 P.3d at 324; *see also Williams*, 553 U.S. at 297. Third, if possible, we apply a limiting construction or partial invalidation to honor the legislature's choices while preserving the statute's constitutionality. *Graves*, ¶ 16, 368 P.3d at 324.

## C. Application

### 1. Construing Section 18-9-111(1)(e)

¶18 When construing a statute, our aim is to ascertain and give effect to the General Assembly's intent. *Graves*, ¶ 27, 368 P.3d at 326. We look to the plain meaning of a statute's terms to determine whether they cover protected communications. *Hickman*, 988 P.2d at 642.

¶19 In construing the phrase "intended to harass" in subsection (1)(e), *Hickman* is instructive. The prosecution charged Hickman with witness retaliation. *Hickman*, 988 P.2d at 632. In examining the statute defining that offense, we concluded that the term "act of harassment" was unconstitutionally overbroad. *Id.* We noted that "[t]he term 'harassment' is synonymous with 'vex,' 'trouble,' or

11

'annoy,'" *id.* at 642 (quoting *Webster's Third New International Dictionary* (1986)), and that it was defined "as conduct that is directed at a specific person that 'annoys, alarms, or causes substantial emotional distress and serves no legitimate purpose,'" *id.* (quoting *Black's Law Dictionary* (7th ed. 1999)). We reasoned that this "broad meaning" applied to a wide range of protected communications, including forecasting a storm or engaging in political discourse. *Id.*; *see also Bolles*, 541 P.2d at 83 (explaining that although forecasting the weather or predicting political trends could alarm (i.e., harass) a person, those are still protected communications).

¶20 Fast forward two decades, and we see that modern definitions of the terms "harass" and "harassment" are not so different. Merriam-Webster defines the verb "harass" as to: "exhaust, fatigue"; "to annoy persistently"; and "to create an unpleasant or hostile situation for[,] especially by uninvited and unwelcome verbal . . . conduct." https://www.merriam-webster.com/dictionary/*harass* [https://perma.cc/5LTT-TZUE]. The definition of "harassment" in Black's Law Dictionary means "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation." (11th ed. 2019). As in *Hickman*, we conclude that this broad meaning of the term "harass" covers protected speech.

12

## 2. Section 18-9-111(1)(e)'s Substantial Sweep

¶21    In evaluating the provision's sweep, we examine whether subsection (1)(e) impermissibly restricts a substantial amount of protected speech. *See Hickman*, 988 P.2d at 642–43; *Smith*, 862 P.2d at 942; *Bolles*, 541 P.2d at 82–83. That is to say, the primary concern here isn't the invasive medium the government seeks to regulate—omnipresent electronic communication—but how much the statute impinges on or potentially chills speech. Today's technology merely amplifies this old-fashioned problem.

¶22    Cyberspace is the modern public square, and it is teeming with eager listeners. "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general and social media in particular." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (citations omitted) (quoting *Reno v. ACLU*, 521 U.S. 844, 868 (1997)). On far-reaching social media platforms such as Facebook and Twitter, users worldwide can debate almost any topic. *Id.* at 1735–36.

¶23    Such electronic communication is often useful, typically innocuous, but sometimes derogatory. And when the unrestrained choose to lob insults into the digital arena, those insults can metastasize. Casual slights spread and intensify. Nevertheless, "First [A]mendment protection is not limited to amiable

13

communications." *State v. Brobst*, 857 A.2d 1253, 1256 (N.H. 2004) (quoting *People v. Klick*, 362 N.E.2d 329, 332 (Ill. 1977)) (alterations omitted).

¶24 On the contrary, people often legitimately communicate in a manner "intended to harass" by persistently annoying or alarming others to emphasize an idea or prompt a desired response. *Id.* at 1255–56. For example, subsection (1)(e) could prohibit communications made by email or social media about the need to combat a public health threat, or to seek shelter from an imminent tornado, or to respond to an active-shooter situation. Or consider more routine communications on the web: negative restaurant reviews left on Google or Yelp, irate emails sent to service providers (contractors, plumbers, etc.), diatribes posted on public officials' social media accounts by disgruntled constituents, or antagonistic comments left on news sites. *See Brobst*, 857 A.2d at 1255–56; *Ex parte Barton*, 586 S.W.3d 573, 584–85 (Tex. App. 2019), (noting the staggering breadth of electronic communication covered by Texas's harassment statute and holding it overbroad), *pet. granted*; *State v. Chen*, 615 S.W.3d 376, 382–83 (Tex. App. 2020) (same). In fact, the statute could even intrude into highly personal family squabbles. *Compare Brobst*, 857 A.2d at 1256 (holding New Hampshire's telephone harassment statute overbroad because "the prohibition of all telephone calls placed with the intent to alarm encompasses too large an area of protected speech"), *with Lehi City v. Rickabaugh*, 487 P.3d 453, 461–62 (Utah Ct. App. 2021)

(holding Utah's electronic communication harassment statute, which was limited in scope to communications made in a "manner likely to provoke a violent or disorderly response" was not overbroad).

¶25 Although subsection (1)(e) mainly targets unprotected speech like true threats and obscenity, its restriction on communication made in a manner "intended to harass" encompasses a substantial amount of protected speech. This brings us to whether the statutory subsection can be salvaged.

### 3. Preserving Subsection (1)(e)

¶26 We see no available limiting construction that would sufficiently narrow the phrase "intended to harass" to render it constitutional. *See Hickman*, 988 P.2d at 636–43 (supplying a limiting construction for the term "threat" but concluding no limiting construction would sufficiently narrow the phrase "act of harassment" in section 18-8-706, C.R.S. (1998)). Viewed in its entirety, the rest of the harassment statute forecloses this approach by proscribing other forms of unprotected speech, leaving no alternative, constitutional construction to ascribe to the phrase at issue. *See Smith*, 862 P.2d at 943–44 ("In construing a statute, we presume that every part . . . was intended to be effective." (quoting *Thiret v. Kautzky*, 792 P.2d 801, 807 (Colo. 1990))). Subsection (1)(e)'s other terms prohibit true threats and obscenity, and we previously held that subsection (1)(h) outlaws fighting words, *see People ex rel. VanMeveren v. Cnty. Ct.*, 551 P.2d 716, 719 (Colo. 1976). Thus, the term

15

"intended to harass" in subsection (1)(e) impermissibly leaches into areas of protected speech. With no alternative, constitutional construction available, we turn to whether a partial invalidation can save subsection (1)(e).

¶27 "A court may sever one section of a statute from the whole if 'partial invalidation will rid the statute of the constitutional infirmity of overbreadth.'" *Hickman*, 988 P.2d at 643 (quoting *People v. Ryan*, 806 P.2d 935, 940 (Colo. 1991)). We need not, and thus do not, invalidate the entire statute. Instead, we hold only that the phrase "intended to harass" in subsection (1)(e) is unconstitutionally overbroad. Our partial invalidation does nothing to disturb the other prohibitions in subsection (1)(e) against communications that are made "in a manner intended to . . . threaten bodily injury or property damage . . . or that [are] obscene."[5] § 18-9-111(1)(e).

---

[5] Although we identify the challenged phrase, consistent with the district court, as "intended to harass," the effect of our ruling is to excise only the words "harass or" from subsection (1)(e) as indicated by strikethrough font below:

> A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she . . . [d]irectly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to ~~harass or~~ threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by

16

## 4. *Bolles* 2.0?

¶28   Our holding today might be summarized simply as "*Bolles* goes digital." *Bolles* dealt with the 1973 version of section 18-9-111(1)(e), which stated in relevant part: "A person commits harassment if, with intent to harass, annoy, or alarm another person, he . . . [c]ommunicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of communication, in a manner likely to harass or cause alarm." *Bolles*, 541 P.2d at 81 n.1 (quoting § 18-9-111(1)(e), C.R.S. (1973)).   Bolles was charged with harassment under subsection (1)(e) for mailing anti-abortion material to approximately 2,400 Boulder County residents. *Bolles*, 541 P.2d at 81.   He challenged the statute as unconstitutionally overbroad and vague, and this court concluded that subsection (1)(e) was facially overbroad and thus unconstitutional. *Bolles*, 541 P.2d at 81.

¶29   The *Bolles* court began its analysis by recognizing the "delicate and vulnerable nature" of free-speech protections and the responsibility of courts to closely inspect "state action which has the effect of curtailing or 'chilling' free expression." *Id.* at 82 (quoting *People v. Vaughan*, 514 P.2d 1318, 1323 (Colo. 1973)). Recognizing that in the area of free speech, statutes must be carefully crafted and

---

telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene.

narrowly drawn, we concluded that, while the statute at issue could "be relied upon to punish for obscene, libelous, [or] riotous communication[,] which is probably constitutionally permissible[,] . . . [it] could also be used to prosecute for communications that cannot be constitutionally proscribed." *Id.*

¶30 Indeed, a fundamental purpose of free speech in our system of government is to debate ideas. *Id.* at 83. These debates may be vigorous and high-minded but may at times devolve into vituperative attacks. "Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects." *Id.* (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)). But as the *Bolles* court aptly observed, if such speech could be restricted, "the protection of the First Amendment would be a mere shadow." *Id.*

¶31 The 1973 version of subsection (1)(e) and the current iteration are similarly expansive. While in 1973 the statute applied to "any other form of communication," now it applies to almost any form of electronic communication. *Cf. People v. McBurney*, 750 P.2d 916, 919 (Colo. 1988) (upholding yet another version of subsection (1)(e), containing the term "in a manner intended to harass," because it was limited to land-line telephones; and distinguishing *Bolles*, explaining that because the statute in *Bolles* applied to any form of communication it "contained no particularized standards to limit the scope of the offense").

¶32    While we sympathize with those who become the target of gratuitous and unfounded insults, we are not persuaded by the prosecution's privacy argument. "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971). Even in *Bolles*, where the defendant mailed highly disturbing materials to people's homes, we concluded that "the intrusion into the recipient's privacy is only minimal since he is not only free to discard at once any mail that he does not wish to receive, but can also ensure that he will not receive any more like it from the sender." 541 P.2d at 84. Likewise, today, the swipe of a finger can often block, or at least delete, unwanted electronic communication. This is a small price to pay for freedom of speech.[6]

## III. Conclusion

¶33    We hold that the phrase "intended to harass" in subsection (1)(e) is unconstitutionally overbroad and affirm the district court's order dismissing Moreno's harassment charge.

---

[6] Because we resolve this matter on overbreadth grounds, we don't address vagueness.

19