22CA1680 Peo v Burkard 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1680
Larimer County District Court No. 20CR1939
Honorable C. Michelle Brinegar, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Joshua Burkard,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Robert Joshua Burkard, appeals the judgment of conviction entered on jury verdicts finding him guilty of one count each of impersonating a peace officer and false reporting to authorities. We affirm.

## I.    Background

¶ 2    In September 2020, police officers were dispatched to investigate the victim's report that her boyfriend, Burkard, had sexually assaulted her. A few days later, Burkard contacted the victim from an unknown phone number to inquire whether she had been in contact with law enforcement regarding the incident. He began their text message exchange by falsely claiming that he was contacting the victim from his parole officer's phone. After the victim asked Burkard why he was using the parole officer's phone, he responded, "Going back to mine."

¶ 3    But shortly thereafter, Burkard sent the victim additional messages from the same number, pretending that they were communications from his parole officer, Lucas Singleton, and ostensibly trying to get the victim to file a statement with the police department regarding the incident. Among other messages, Burkard wrote:

- "Well I [am] taking [Burkard] to th[e] station w[i]ll you come and file a statement";

- "You[']r[e] going to have to by the end of the day";

- "This is [O]fficer [L]ucas I need you to answer your phone"; and

- "We are going to need a[n] explanation."

¶ 4    During this text exchange with the unknown number, the victim responded that she had already made her statement to the police. She also directed Burkard, in the guise of "Officer Lucas," to contact "[her] detective" and provided him with contact information for Investigator Ryan Adams. Undeterred, Burkard then called Investigator Adams and again misrepresented himself as Parole Officer Singleton (whom he identified as "Officer Lucas"):

> [INVESTIGATOR ADAMS:] Investigations division, this is Ryan.
>
> [BURKARD:] Yeah, this is Officer Lucas, and we will just need [the victim] to come on down to the station. . . . Tell [the victim] she needs to come to the station Loveland Police Department.

¶ 5    The prosecution charged Burkard with impersonating a peace officer under section 18-8-112, C.R.S. 2024, which states that a

2

person commits the offense by "falsely pretend[ing] to be a peace officer and perform[ing] an act in that pretended capacity."[1]  After the close of evidence, the trial court granted a defense motion to add false reporting to authorities as a lesser nonincluded offense.[2]  The jury found Burkard guilty of both crimes.  The trial court then sentenced him to 2 years in prison for impersonating a peace officer and 180 days of jail time for false reporting to authorities, to be served concurrently in the custody of the Department of Corrections.

## II.    Analysis

¶ 6      On appeal, Burkard contends that his conviction for impersonating a peace officer can't stand because (1) section 18-8-112 is unconstitutionally overbroad and vague; (2) the trial

---

[1] Impersonating a peace officer was a class 6 felony when Burkard committed these acts.  *See* § 18-8-112(2), C.R.S. 2020.  It's a class 5 felony under the current version of the statute.  § 18-8-112(2), C.R.S. 2024.

[2] Specifically, the added count was for false reporting of identifying information to law enforcement authorities.  *See* § 18-8-111(1)(c), C.R.S. 2020.  Subsection (1)(c) has since been repealed and relocated to section 18-8-111.5, C.R.S. 2024.  *See* Ch. 462, sec. 277, § 18-8-111, 2021 Colo. Sess. Laws 3195.

court reversibly erred by admitting certain testimony from the victim; and (3) the court reversibly erred by allowing the prosecutors to engage in misconduct during closing and rebuttal closing arguments. We address each of these contentions in turn.

### A. The Constitutionality of Section 18-8-112

¶ 7 Burkard first contends that Colorado's impersonating a peace officer statute is unconstitutionally overbroad and vague, both facially and as applied to his conduct.

### 1. Applicable Law and Standard of Review

¶ 8 A statute is overbroad if its scope is so comprehensive that it restricts or has a chilling effect on speech protected by the First Amendment. *See People v. Graves*, 2016 CO 15, ¶ 12. A defendant can bring a facial overbreadth challenge to a statute that impacts a constitutionally protected activity, even when his own activity is not protected. *People v. Hickman*, 988 P.2d 628, 635-36 (Colo. 1999). But to prevail on such a challenge, the defendant "must show that the overbreadth of the statute is both real and substantial, judged in relation to the statute's plainly legitimate sweep." *Graves*, ¶ 14. In evaluating an overbreadth challenge, the court must decide whether there is a substantial encroachment to any constitutionally

protected speech.  *See Hickman*, 988 P.2d at 636.  Unless the statute reaches a substantial amount of constitutionally protected speech, an overbreadth challenge fails.  *Graves*, ¶ 15.

¶ 9    If a statute reaches protected speech but is not substantially overbroad, a defendant must show that the statute is unconstitutional as applied to his conduct.  *See People v. Campbell*, 174 P.3d 860, 866 (Colo. App. 2007).  "[A]n as-applied challenge alleges that the statute is unconstitutional as to the specific circumstances under which a defendant acted."  *People v. Ford*, 232 P.3d 260, 263 (Colo. App. 2009).

¶ 10    While the overbreadth doctrine derives from the First Amendment, *People v. Moreno*, 2022 CO 15, ¶ 13, the vagueness doctrine is rooted in due process principles that a statute must (1) "give fair warning of prohibited conduct so that individuals may conform their actions accordingly" and (2) "establish standards that are sufficiently precise to avoid arbitrary and discriminatory enforcement," *Graves*, ¶ 17.  Consequently, "a conviction fails to comport with due process where it is obtained under a statute that is so vague that it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it

authorizes or encourages seriously discriminatory enforcement.'"
*Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

¶ 11     We review the constitutionality of a statute de novo. *Id.* at ¶ 9.

### 2. The Parties' Arguments

¶ 12     In support of his overbreadth challenge, Burkard argues that the statute sweeps in a substantial amount of constitutionally protected speech because while it proscribes "an act" in the pretended capacity, the statute doesn't define that term or include any other language that would limit the statute's reach to the acts within its legitimate sweep. Under these circumstances, he asserts, "the impersonating a peace officer statute reaches far beyond its legitimate aims and constitutional legislative goals" of ensuring "public safety and protecting the reputation of law enforcement." Likewise, Burkard contends that the statute is "unconstitutionally vague because the undefined term 'act' fails to provide fair warning of prohibited conduct and authorizes arbitrary and discriminatory enforcement."

¶ 13     The People argue that Burkard's overbreadth and vagueness challenges aren't properly before us because he didn't raise them in the trial court. Burkard concedes that he didn't preserve those

challenges in the trial court but asserts that we should nonetheless review his claims because doing so would best serve the goals of efficiency and judicial economy. *See Hinojos-Mendoza v. People*, 169 P.3d 662, 667-68 (Colo. 2007), *abrogated on other grounds as recognized by Phillips v. People*, 2019 CO 72, ¶¶ 32-33.

### 3. Whether to Address the Merits of Burkard's Unpreserved Constitutional Challenges

¶ 14 Constitutional arguments generally must be explicitly raised in the trial court to alert the court to the challenger's contentions and allow it to develop a factual record on the issue. *People v. Allman*, 2012 COA 212, ¶ 13. That is particularly true when a party, such as Burkard here, asserts that a statute is unconstitutional as applied to his conduct. *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005). If a party fails to challenge the constitutionality of a statute in the trial court, then the court doesn't make sufficient factual findings regarding that claim for our review. Thus, for an appellate court to entertain an unpreserved as-applied constitutional challenge, "it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied." *Id.*; *see also People v. Patrick*, 772

P.2d 98, 100 (Colo. 1989) ("We again stress that we cannot determine the as-applied constitutionality of a statute based upon an incomplete record of the facts."); *People v. Mountjoy*, 2016 COA 86, ¶ 38 (declining to review a defendant's as-applied challenge when the defendant didn't raise the issue in the trial court and the court made no factual findings to be reviewed), *aff'd on other grounds*, 2018 CO 92M; *People in Interest of L.C.*, 2017 COA 82, ¶ 17 ("Appellate courts generally decline to address unpreserved as-applied challenges to the constitutionality of a statute because of the lack of a developed record.").

¶ 15    As to the unpreserved facial challenges to the statute, Burkard and the People argue divergent case law. The People urge us to follow cases stating that constitutional challenges should not be raised for the first time on appeal, while Burkard argues that doing so here would be an appropriate exercise of our discretion, particularly because the review would "clearly further judicial economy." *See People v. Houser*, 2013 COA 11, ¶¶ 29-35 (describing the different approaches to unpreserved constitutional challenges).

¶ 16    In this case, however, we conclude that we need not choose one of these paths because any error here would not have been plain in any case.[3]

### 4.    Any Error Here Wasn't Plain

¶ 17    Burkard and the People also disagree on whether plain error applies to his claim.  Burkard argues that plain error doesn't apply when a statute is unconstitutional.  We disagree.  Unpreserved

---

[3] We disagree with Burkard's argument that we "should exercise [our] discretion to review [his] constitutional claims because a miscarriage of justice would result if his conviction stands under a plainly unconstitutional statute."  While we may take up unpreserved issues in civil cases to prevent a miscarriage of justice, that standard doesn't apply in criminal cases.  *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo. App. 2011) (collecting cases); *see also People in Interest of M.B.*, 2020 COA 13, ¶ 21 (recognizing the miscarriage of justice exception for review of unpreserved errors in dependency and neglect cases).  Rather, we generally review unpreserved issues in criminal cases for plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 14.  And unlike its federal counterpart, the miscarriage of justice component is not part of Colorado's plain error framework.  *See People v. Greer*, 262 P.3d 920, 932-33 (Colo. App. 2011) (J. Jones, J., specially concurring); *see also People v. Crabtree*, 2024 COA 40M, ¶¶ 68-71 (declining to adopt the federal plain error analytical framework).

constitutional errors that are not structural are reviewed for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14.[4]

¶ 18    To qualify as plain error, an error must be obvious and substantial. *Id.* We reverse only when the error so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction. *Id.* An error is obvious only if, at the time of trial, the action challenged on appeal contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *See People v. Crabtree*, 2024 CO 40M, ¶¶ 42, 53.

¶ 19    Burkard argues that the error here was obvious in part because the Colorado Supreme Court had observed in *Bolles v. People*, 541 P.2d 80, 82 (Colo. 1975), that "a statute is facially overbroad if it sweeps so comprehensively as to substantially include within its proscriptions constitutionally protected speech."

---

[4] To the extent Burkard posits that structural error applies in this case, we also disagree. *See Johnson v. People*, 2023 CO 7, ¶ 28 (reviewing for plain error the defendant's unpreserved vagueness challenge); *People v. Helms*, 2016 COA 90, ¶¶ 13-14 (reviewing unpreserved facial challenges to the constitutionality of a statute for plain error).

But he doesn't explain — and we don't see — why this general statement from *Bolles* should have alerted the trial court that section 18-8-112 may be unconstitutional. After all, *Bolles* addressed the constitutionality of a different law, concluding that portions of Colorado's harassment statute were facially overbroad. *Id.* at 81, 84. And Burkard directs us to no Colorado appellate opinion that has addressed whether the impersonating a peace officer statute is constitutional, let alone suggested that the statute is constitutionally infirm in ways he contends it is.

¶ 20    When Colorado statutory law or case law would not have alerted the trial judge to an unobjected-to error, the error can't be deemed obvious. *Crabtree*, ¶ 42; *see also People v. Taylor*, 2021 COA 133, ¶ 15 ("Statutes are entitled to a presumption of constitutionality, rooted in the doctrine of separation of powers, through which 'the judiciary respects the roles of the legislature and the executive in the enactment of laws.'" (quoting *Rocky Mountain Gun Owners v. Polis*, 2020 CO 66, ¶ 30)). And because any constitutional error wasn't obvious at the time of Burkard's trial, the error wasn't plain. *See Crabtree*, ¶¶ 41-43 (noting that an error is plain only if it's both obvious *and* substantial).

11

¶ 21    Under these circumstances, then, we conclude there was no plain error in the trial court not sua sponte declaring the statute unconstitutionally overbroad and vague.

### B.    Admissibility of Evidence

¶ 22    Burkard next contends that the trial court reversibly erred by failing to sua sponte exclude certain portions of the victim's testimony.  We disagree.

### 1.    Applicable Law and Standard of Review

¶ 23    "The Colorado Rules of Evidence favor the admissibility of relevant evidence unless otherwise prohibited by constitution, statute, or rule." *People v. Hood,* 2024 COA 27, ¶ 19; *see also* CRE 402.  Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable.  CRE 401.  But relevant evidence may nonetheless be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice or misleading the jury.  CRE 403.

¶ 24    We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. Owens,* 2024 CO 10, ¶ 105.  "[A] trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or based on an incorrect understanding of the

12

law." *Id.* However, because Burkard didn't object to the challenged testimony at trial, we will reverse only if we conclude that the trial court's decision to admit the testimony was plainly erroneous. *See People v. Martinez*, 2020 COA 141, ¶ 62.

### 2. The Trial Court Didn't Reversibly Err by Admitting the Challenged Portions of the Victim's Testimony

¶ 25    Burkard contends that the trial court reversibly erred by admitting the victim's testimony that she had "known [Burkard] through this court process"; that their relationship was "bad" when she received the relevant texts from him, as "[i]t was right after [she] had contacted [the] police"; and that during the text message exchange, she was staying "at a hotel that the Victims' Advocacy had helped set up for the evening." Burkard argues that these statements constituted "inflammatory, irrelevant, and prejudicial evidence suggesting that [he] had victimized [the victim]" in a manner unrelated to the charges in this case. In other words, Burkard asserts that the statements were inadmissible because they were not relevant to the elements of his impersonating a peace officer charge and they improperly referred to the original sexual assault allegations. We discern no reversible error.

13

¶ 26    For starters, contrary to Burkard's argument, we don't view the victim's testimony about how she had known him through the court process and the quality of their relationship as irrelevant evidence that was only related to the underlying sex assault investigation. While these statements perhaps didn't pertain directly to an element of his impersonation charge, they served as background information about the facts under which the charged crime occurred. *See People v. Dunlap*, 124 P.3d 780, 806 (Colo. App. 2004) (noting that evidence that doesn't relate to any proposition that must be proved may nonetheless be admissible as background information).[5] For example, just before the victim testified that she had known Burkard "through this court process," she recounted how they "met a couple years ago through Facebook" and "had hung out a couple times since then." Similarly, she testified about the general quality of her relationship with Burkard

---

[5] On appeal, Burkard argues only that this evidence was irrelevant and unfairly prejudicial. To the extent he also implies that this evidence was improper character evidence, we conclude that the statements were not obviously extrinsic and therefore didn't clearly fall within CRE 404(b). *See Rojas v. People*, 2022 CO 8, ¶ 44 (recognizing an intrinsic-extrinsic distinction with extrinsic acts falling under CRE 404(b) and intrinsic acts falling outside the rule).

because the prosecutor had asked her to share that information "for the context of those messages."

¶ 27 Moreover, the victim's statements hardly revealed more than what was already obvious. Indeed, Burkard stipulated to the fact that the alleged charged conduct occurred *after* Investigator Adams had already been assigned to investigate a "disagreement" between Burkard and the victim. The trial court had read that stipulation to the jury by the time of the victim's testimony. Given the testimony and evidence provided to the jury, the victim's statement that their relationship was "bad" at the time of the texts wasn't new information. Consequently, we can't say on this record that the trial court abused its discretion by failing to sua sponte exclude the victim's statement generally describing the current state of her relationship with Burkard. *See Owens*, ¶ 105.

¶ 28 As for the victim's testimony about where she was when she received Burkard's texts, the victim didn't specify why the Victims' Advocacy had arranged for her to stay at a hotel, much less suggest that its involvement was related to the undisclosed sexual assault allegations. But even if we were to assume that this statement improperly suggested that Burkard had victimized her in some

unknown way, any error in admitting that statement wasn't plain because it wasn't substantial. *See Martinez*, ¶ 62.

¶ 29 First, the victim's reference to the Victims' Advocacy's involvement was very brief and bare bones. It was limited to a single sentence in the roughly 250-page transcript from the 2-day trial, the prosecutor didn't ask any follow-up questions, and we see no indication that the prosecutor referred to this statement during closing argument or at any other point during the trial. *See People v. Arzabala*, 2012 COA 99, ¶ 80 (concluding that the trial court didn't plainly err by admitting certain testimony in part because the testimony was brief and the prosecutor didn't specifically refer to it in closing argument).

¶ 30 Second, overwhelming evidence supported Burkard's conviction for impersonating a peace officer as it was undisputed that he had falsely identified himself as a parole officer in the communications with the victim and Investigator Adams. True, Burkard argued that he hadn't committed an act in the false capacity of a parole officer. But as his counsel put it in closing argument, "the facts are pretty straightforward" and many "of them ha[d] been stipulated to." *See People v. Munoz-Diaz*, 2023 COA 105,

16

¶ 29 (concluding that any evidentiary error wasn't plain because there was overwhelming independent evidence of the defendant's guilt).

¶ 31    For these reasons, we conclude that the trial court didn't reversibly err by admitting portions of the victim's testimony that Burkard challenges on appeal.

## C.    Prosecutorial Misconduct

¶ 32    Finally, Burkard contends that the trial court reversibly erred by allowing the prosecutors to engage in misconduct during closing and rebuttal closing arguments.  We again disagree.

### 1.    Applicable Law and Standard of Review

¶ 33    We use a two-step analysis to review prosecutorial misconduct claims.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we evaluate whether the prosecutor's conduct was improper under the totality of the circumstances, considering factors such as the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction.  *People v. Vialpando*, 2022 CO 28, ¶ 21.  Second, if the conduct was improper, we determine whether reversal is required under the applicable standard of review.  *Wend*, 235 P.3d at 1096.  Each of these steps is

analytically independent of the other, so a prosecutorial misconduct claim fails unless both steps are satisfied.  *Id.*

¶ 34     Because Burkard didn't object to the asserted misconduct at trial, we review his claims for plain error.  *Vialpando*, ¶ 20. Prosecutorial misconduct constitutes plain error only if it is flagrantly, glaringly, or tremendously improper.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005).  And prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Burdette*, 2024 COA 38, ¶ 61.

### 2.     The Prosecutors Didn't Commit Misconduct During Closing and Rebuttal Closing Arguments

¶ 35     Burkard contends that one of the prosecutors engaged in misconduct during closing argument by (1) repeatedly referring to the text messages he had sent to the victim as "threats" and (2) stating that the victim had already been in contact with the police when she received his texts.  He also asserts that during rebuttal closing, a different prosecutor (3) improperly argued that Burkard's texts were intended "to intimidate" the victim; and (4) drew the jury's attention to a "high-profile" case that a prospective juror mentioned during voir dire, "in which a woman

named Lacy Miller was murdered after being pulled over by a person impersonating a police officer." Although Burkard didn't object to any of these statements during trial, on appeal he posits that "[t]hese comments cumulatively served to improperly suggest that [he] had victimized [the victim] and that the jury should base its decision on this inference of other nefarious conduct." We're not persuaded.

¶ 36    To begin, we don't agree with Burkard that it was misconduct to characterize his texts to the victim as "threats." While not all of his messages can be construed as threats, the record shows that the prosecutor used that characterization only when discussing two messages in particular. Specifically, the prosecutor stated that Burkard "tried a threat" when he told the victim that she would need to file a police statement by the end of the day. And the prosecutor used the term "threat" to describe the message in which Burkard said, "We are going to need a[n] explanation." Considering that Burkard was writing to the victim pretending to be a parole officer, those two messages could be perceived as "threats" that if the victim didn't do what he was asking her to do, the person

19

communicating with her could exercise his purported authority as a parole officer.

¶ 37 Thus, we discern no misconduct in the prosecutor's use of that term. Likewise, we don't discern under these circumstances any misconduct in the comment during rebuttal closing that Burkard's messages were intended "to intimidate [the victim] into going [to the police station] and talking to the cops." *See People v. Rodriguez*, 2021 COA 38M, ¶ 31 (observing that a prosecutor has "'wide latitude in the language and presentation style used' during closing argument" and that the prosecutor "may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance") (citations omitted).

¶ 38 Moreover, we're not persuaded by Burkard's argument that the prosecutor's comments about how the victim was already in contact with the police at the time of the text exchange "created an unfair and prejudicial inference that [he] had done something criminal or harmful to [the victim]." Those comments accurately described facts in evidence. As noted above, the victim told Burkard in the text exchange that she had already filed a police statement. And her contact with law enforcement was apparent

from the parties' factual stipulation that Investigator Adams was already investigating the underlying incident when the charged conduct occurred. *See People v. McMinn*, 2013 COA 94, ¶ 61 ("Prosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom.").

¶ 39 Finally, Burkard takes issue with the following statements the prosecutor made in her rebuttal closing:

> Now, at the beginning of jury selection, when you were all here, you all talked about why this kind of conduct is criminalized and why it is illegal in our state. You said peace officers should be someone that you can trust, that if you get a call from the likes of Investigator Adams or [Parole] Officer Singleton, that you know that the person you're talking to on the phone is a cop. You want to have that trust.
>
> You said that peace officers are ones in a position of authority, that you don't want someone to use that authority when they don't actually have it. And that's exactly why you're here today. You're here today because someone -- Mr. Burkard -- pretended to be a parole officer and took acts under that guise.

¶ 40 He asserts that these statements drew the jury's attention to a case that one prospective juror mentioned during jury selection in support of her belief that impersonating a peace officer should be a crime:

[JUROR D]: Well, obviously, there's safety issues if, you know, someone is impersonating it, so I think that's something that people have to be aware of. I mean, I remember a case in Fort Collins. It was a long time ago, but I think -- Lacy Miller or some -- I can't remember exactly.

But someone had impersonated a police officer and pulled her over, and I think she was killed. And, you know, it was probably one of the first times I had ever heard of something like that happening, so yeah. I mean, I think it's crime to impersonate a police officer though.

Burkard contends that "[b]y reminding the jury why impersonating a peace officer is illegal 'in our state,' the prosecutor drew a line of reference between what happened to Lacy Miller and what happened between Mr. Burkard and [the victim]."

¶ 41    We disagree with this interpretation of the prosecutor's comments. The record shows that during jury selection, the prosecutor asked multiple prospective jurors to share their thoughts about whether impersonating a peace officer should be a crime. While Juror D brought up the Lacy Miller case, the prosecutor and the other prospective jurors didn't talk about it further. Instead, the prosecutor focused on safety concerns associated with someone assuming the authority of a peace officer

22

and how such impersonation undermines the public's trust in law enforcement. During that colloquy, one prospective juror observed that "police officers are supposed to be the people you can trust."

¶ 42 The prosecutor's comments in rebuttal closing emphasized the concerns that all prospective jurors had identified, with the prosecutor reminding the jurors how they had discussed that "peace officers should be someone that you can trust" and "that you don't want someone to use [the] authority [of a peace officer] when they don't actually have it." In light of this record, then, we don't perceive the prosecutor's remarks as referring to the Lacy Miller case in particular, much less as inviting the jury to equate Burkard's actions with the actions implicated in that case.

¶ 43 In sum, we conclude that the statements the prosecutors made during closing and rebuttal closing arguments weren't improper, let alone so flagrantly, glaringly, or tremendously improper as to constitute plain error. *See Domingo-Gomez,* 125 P.3d at 1053. Thus, Burkard's prosecutorial misconduct claim fails.

## III.   Disposition

¶ 44    The judgment is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.